IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| AARON HUNGER, | ) | CIVIL 12-00549 LEK-RLP |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| UNIVERSITY OF HAWAII; JOHN | ) | |
| DOES 1-25; JANE DOES 1-25, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

**ORDER DENYING PLAINTIFF'S MOTION FOR TEMPORARY
RESTRAINING ORDER AND/OR PRELIMINARY AND PERMANENT INJUNCTION**

Before the Court is Plaintiff Aaron Hunger's
("Plaintiff") Motion for Temporary Restraining Order and/or
Preliminary and Permanent Injunction ("Motion"), filed on
November 1, 2012.  Defendants University of Hawai`i ("the
University"), Mary Rita Cooke Greenwood, Dee Uwono, and Ryan M.
Akamine (collectively "Defendants") filed their memorandum in
opposition on November 13, 2012, and Plaintiff filed his reply on
November 20, 2012.  The portion of the Motion seeking a temporary
restraining order ("TRO") came on for hearing on November 30,
2012.  Appearing on behalf of Plaintiff, who was present, were
Eric Seitz, Esq., and Ronald Kim, Esq., and appearing on behalf
of Defendants were Kenneth Robbins, Esq., and John-Anderson
Meyer, Esq.  Plaintiff presented oral testimony at the hearing.
After careful consideration of the Motion, supporting and
opposing memoranda, and the arguments and evidence submitted at

the hearing, and for the reasons set forth below, Plaintiff's
Motion is HEREBY DENIED as to Plaintiff's request for a TRO, and
DENIED WITHOUT PREJUDICE as to Plaintiff's request for a
preliminary and/or permanent injunction.

**BACKGROUND**

**I.   Factual Background**

In October 2011, Plaintiff was in the Political Science
Ph.D. program at the University, having recently completed his
Masters Degree.  Plaintiff was accepted into the Masters and
Ph.D. program in 1998.  [Trans. of 11/30/12 Hrg., filed 12/6/12
(dkt. no. 27) ("Hrg. Trans."), at 6.]  The circumstances giving
rise to the instant case began with an incident which occurred on
October 12, 2011 at the University's William S. Richardson School
of Law library ("the Law Library").  According to Plaintiff, he
was utilizing the Law Library between classes when he was
disturbed by a loud conversation, which included racial and
religious epithets, between two students sitting behind him.
Frustrated, Plaintiff stood up and shook his head.  One of the
students, who identified himself as a third-year law student,
stood up and confronted Plaintiff.  [First Amended Complaint,
filed 10/31/12 (dkt. no. 6), at ¶¶ 12-14.]  The student asked
Plaintiff if he wanted to "take it outside", but Plaintiff
refused and moved to another seat farther away.  [Id. at ¶ 16.]
A third law student joined in the confrontation, but Plaintiff

2

tried to continue reading.  Three security guards and the third
student approached Plaintiff as he was about to leave the Law
Library.  One of the guards asked Plaintiff for identification,
and Plaintiff asked to be taken to a side room because they were
attracting attention.  Plaintiff was eventually taken to a small
room, where he was detained.  Although he was told that he was
not under arrest, he was not allowed to leave and was either
pushed into a corner or onto a seat when he attempted to leave.
Plaintiff was not given any explanation of why he was being
forced to wait.  [Id. at ¶¶ 17-27.]  One of the guards said that
there had been a report that Plaintiff caused a disturbance and
threatened one of the law students.  Plaintiff tried to explain
his version of the events and told the guards that the
surveillance footage would confirm his version.  One of the
guards said there would be an incident report and Plaintiff and
the students would be questioned.  [Id. at ¶¶ 30-32.]

        One of the guards also offered to call the police.
When the police arrived, one of the officers told Plaintiff the
police had been called because Plaintiff had made terrorist
threats.  Plaintiff's detention continued during the police
officers' investigation.  Ultimately, Plaintiff received a
Trespass Warning and was allowed to leave.  [Id. at ¶¶ 34-36.]
At the hearing before this Court, Plaintiff testified that the
incident was no more than a verbal dispute; no one struck any

blows.  Plaintiff denied being the aggressor, and he denied
making any threats.  [Hrg. Trans. at 7-8.]  The Trespass Warning
stated, in pertinent part:

> This Trespass Warning advises you that your
> presence is no longer desired at the University of
> Hawai`i at Mānoa.  This warning serves as notice
> to you that you are not to return to said
> properties or premises **for a period of one
> calendar year from the receipt of this warning**.
> If you violate this warning, you will be subject
> to arrest and prosecution for the crime of
> Trespass.
>
> Reference: The Criminal/Simple Trespass Section of
> the Hawai`i Revised Statutes, section 708-815.
>
> REMARKS/SPECIAL INSTRUCTIONS: LAW LIBRARY FOR A
> PERIOD OF ONE YEAR WHICH INCLUDES LAW SCHOOL.

[Motion, Decl. of Eric A. Seitz ("Seitz Decl."), Exh. A (emphases
in original) (Pltf.'s emphasis omitted).]

At the hearing before this Court, Plaintiff testified
that either the University security staff or the police officers
explained to him that he would have to attend a hearing before he
would be allowed back on the campus and that the Dean of Students
would contact him.  According to Plaintiff, his understanding was
that he was barred from the Law Library for at least a year and
barred from the entire campus until the hearing.  Plaintiff also
testified that his University email was shut off and he was
instructed not to have contact with anyone from the University
until the conclusion of the hearing.  Plaintiff also understood
that there would be criminal charges brought against him.

4

Immediately after the incident, Plaintiff went to his workplace and sought an attorney.  Plaintiff retained Joseph W. Lee, Esq. [Hrg. Trans. at 8-9.]

Plaintiff received a letter from Defendant Uwono[1] dated October 19, 2011 ("10/19/11 Letter").  The 10/19/11 Letter stated:

> I am in receipt of a report alleging behavior in violation of the following sections of the policies E7.208, "University of Hawai`i Systemwide Student Conduct Code":
> IV.B.3. Health or safety - Any conduct which threatens or endangers the health or safety of any person including but not limited to, physical abuse, verbal abuse, threats, intimidation, harassment, coercion, or stalking., [sic]
> IV.B.8. Failure to comply and/or provide identification - Failure to comply with any directions of UH officials or law enforcement officers acting in performance of their duties and/or failure to provide identification to these persons when requested to do so.
>
> Specifically, you are alleged to have yelled profanities at two law students inside the Law Library on October 12, 2011.  You allegedly threatened the male student by yelling, "Shut the fuck up.  You like go outside?"  Subsequently, you allegedly got in his face and yelled, "I would cut out your fucking throat."  Finally, when Campus Security officers arrived, you allegedly failed to comply by attempting to leave the scene (CS #2011-1020).  Under University policy, my office is designated to investigate these allegations and apply sanctions as appropriate.
>
> Please contact my office at (808)956-4416 by October 31, 2011 4:30 PM to schedule an

---

[1] Defendant Uwono is the Director of Judicial Affairs of the University of Hawai`i at Mānoa.  [Mem. in Opp., Decl. of Dee Uwono ("Uwono Decl."), at ¶ 1.]

> appointment to discuss this matter.  **This
> appointment is a required administrative
> appointment.  Failure to schedule or keep it may
> jeopardize your continued enrollment at the
> University of Hawai`i at Manoa.**

[Seitz Decl., Exh. B at 1 (emphasis in original).]  The 10/19/11
Letter directed Plaintiff to a website where he could view the
policies and procedures in the University of Hawai`i Student
Conduct Code ("Student Conduct Code").  [Id.]  Defendant Uwono
sent the 10/19/11 Letter to Plaintiff's email address and mailing
address on file with the University.  [Id. at 2.]

     Defendant Uwono then sent Plaintiff an amended version
of the 10/19/11 Letter, dated October 20, 2011 ("10/20/11 Amended
Letter").  The 10/20/11 Amended Letter was identical to the
10/19/11 Letter except that it advanced the deadline for
Plaintiff to contact Defendant Uwono's office to October 21, 2011
at 4:30 p.m.  [Seitz Decl., Exh. C.]

     After Plaintiff received the 10/19/11 Letter and the
10/20/11 Amended Letter, he turned them over to Mr. Lee and asked
Mr. Lee what he should do.  [Hrg. Trans. at 9.]  Mr. Lee
attempted to contact Defendant Uwono.  Mr. Lee made approximately
sixteen calls to her and left messages through November 1, 2011,
but she did not return the majority of his calls.  She called him
back two or three times, but he was unavailable to take her call.
Mr. Lee and Defendant Uwono finally spoke on or about November 1,

6

2011, but Defendant Uwono stated that she would only discuss the incident directly with Plaintiff.  [Motion, Decl. of Joseph W. Lee ("Lee Decl.") at ¶¶ 2-5.]  Plaintiff testified that Mr. Lee instructed him to try to call Defendant Uwono and Plaintiff "made a phone call with another professor[.]"  [Hrg. Trans. at 10.]  Plaintiff intended to record the call and to ask Defendant Uwono if he could have an attorney present when he met with her.  According to Plaintiff, Defendant Uwono's assistant told him that Defendant Uwono would not take his call and that it was improper for him to call her.  She would call him.  Plaintiff testified that he attempted on a total of three occasions to call Defendant Uwono.  [Id.]

Defendant Uwono sent Plaintiff a letter dated November 1, 2011 ("11/1/11 Letter").  It stated that her office notified him, by way of the 10/19/11 Letter and the 10/20/11 Amended Letter, of the complaints of his infractions of the Student Conduct Code and required him to contact her office to schedule a meeting to discuss the matter.  The 11/1/11 Letter stated that the 10/20/11 Amended Letter advanced the deadline for Plaintiff to contact Defendant Uwono's office because of "the egregiousness of the alleged violations[.]"  [Seitz Decl., Exh. D at 1.]  The 11/1/11 Letter repeated the policies at issue and Plaintiff's alleged conduct, and the letter noted that Plaintiff had not responded to either the 10/19/11 Letter or the 10/20/11 Amended

7

Letter.  Defendant Uwono therefore found Plaintiff to have
violated sections IV.B.3 and IV.B.8 of the Student Conduct Code
and imposed the following sanctions:

> 1. Suspension
> Start Date: Monday, October 31, 2011
> Complete by: Wednesday, October 31, 2012
> Due to the egregiousness of the incident discussed
> above and in consideration of all the information
> I have gathered, including the Campus Security
> report and statements from the reporting person
> and witnesses, I regret to inform you that you are
> hereby Suspended from the University of Hawai`i at
> Mânoa [sic] for one academic year (effective date
> indicated above).  You will be eligible for re-
> enrollment for the Spring 2013 semester.  Should
> you wish to return to the University, you must re-
> apply for admission at that time.  Upon your
> return, you will be placed on Formal Probation for
> the remainder of your undergraduate tenure.
>
> Failure to abide by the sanction listed above may
> jeopardize your continued enrollment at the
> University of Hawai`i at Manoa.

[Id. at 2.]

In addition to the University's administrative
proceedings, Plaintiff was the subject of criminal misdemeanor
proceedings arising from the incident.  [Lee Decl. at ¶ 8.]
Plaintiff was charged with violating Haw. Rev. Stat. § 707-717,
terroristic threatening in the second degree, and he ultimately
entered a deferred acceptance of *nolo contendere* plea to a
violation of Haw. Rev. Stat. § 711-1106(1)(b), harassment.
Judgment was entered on August 24, 2012.  [Uwono Decl., Exh. A
(Notice of Entry of Judgment and/or Order).]

Plaintiff's counsel sent a letter dated October 26,

8

2012 to Darolyn H. Lendio, Esq., the Vice President for Legal Affairs and University General Counsel, to address when Plaintiff could return to the Political Science program.  Counsel asked for confirmation that Plaintiff could resume his studies immediately. [Seitz Decl., Exh. E.]  Defendant Akamine responded to counsel's letter in an email dated October 31, 2012 ("10/31/12 Email"). [Id., Exh. F.]  The 10/31/12 Email noted that the 11/1/11 Letter provided that Plaintiff's suspension ended on October 31, 2012 and that Plaintiff must re-apply for admission for the Spring 2013 semester.  It also noted that Plaintiff would have to "follow the Graduate Division re-application process for the Political Science department" and instructed where to file the relevant forms and information on the University's website.  [Id. at 1.]  Defendant Akamine, however, stated that "[t]he Political Science department procedures do not allow graduate students to start studies in the Spring, so if Mr. Hunger is re-admitted, he would need to start in the Fall of 2013."  [Id.]  The 10/31/12 Email instructed Plaintiff to contact Debora Halbert, the Political Science Department Chair and Interim Graduate Chair, to discuss the process.  [Id.]

## II.  <u>Procedural History</u>

Plaintiff filed this action on October 12, 2012. Plaintiff and Plaintiff's counsel decided not to file the action until after resolution of the criminal proceedings.  [Hrg. Trans.

at 38.]   Plaintiff filed his First Amended Complaint for Damages,

Declaratory and Injunctive Relief ("First Amended Complaint") on

October 31, 2012.   [Dkt. no. 6.]   The First Amended Complaint

alleges the following claims:

1) violation of Plaintiff's right to free speech pursuant to the
   First Amendment of the United States Constitution,
   incorporated by the Fourteenth Amendment, and pursuant to
   Article I, §§ 2, 4, and 6 of the Hawai`i State Constitution
   ("Count I");
2) violation of Plaintiff's right to due process pursuant to the
   Fourteenth Amendment of the United States Constitution and
   pursuant to Article I, § 5 of the Hawai`i State Constitution
   ("Count II");
3) a state law battery claim ("Count III");
4) a state law false arrest claim ("Count IV"); and
5) a state law negligence claim ("Count V").

The First Amended Complaint asserts that Defendants have

precluded him from resuming his studies until the Fall 2013

semester and that, even if he does re-apply for admission, his

acceptance is not guaranteed.   Plaintiff contends that Defendants

summarily suspended him for an effective period of two years.

[Id. at ¶¶ 43, 58.]   At the hearing on the Motion, Plaintiff

argued that, because re-admission is not guaranteed, the

suspension would effectively be an expulsion.   [Hrg. Trans. at

42.]

          In the instant Motion, Plaintiff emphasizes that he has

never received a hearing or any other opportunity to challenge

the allegations against him, the Trespass Notice, and/or his

suspension.   Further, Defendant Uwono did not apprise him that he

had a right to a hearing or a right to appeal her decision.   He

argues that he is likely to succeed on the merits of his due
process claim because he had a right to some form of hearing
prior to his suspension, particularly because the suspension may
effectively be an expulsion.  Plaintiff argues that his is likely
to suffer irreparable harm without preliminary relief because the
deprivation of constitutional rights is presumptively
irreparable.  Plaintiff asserts that there were no exigent
circumstances justifying his summary suspension without a
hearing, and he argues that Defendants will not suffer any harm
if this Court orders Defendants to re-admit him immediately
pending the outcome of a valid hearing regarding the incident.
Thus, he argues that the public interest weights heavily in his
favor.  Finally, he argues that, under the circumstances of this
case, the balance of the equities also weighs in his favor.
[Mem. in Supp. of Motion at 4-9.]

        In response, Defendants emphasize that Plaintiff's
suspension has expired and that Plaintiff is free to re-apply for
admission to the University.  Defendants argue that Plaintiff was
the instigator in the underlying incident and that he failed to
take the necessary steps to allow him to return to campus on
November 1, 2012 after the expiration of his suspension.
Defendants also assert that Plaintiff had twelve days' notice,
from October 19 to 31, 2011, of the charges against him.  Thus,
Defendants contend that Plaintiff himself is responsible for his

current position.  [Mem. in Opp. at 2-3.]  Defendants argue that they did not violate Plaintiff's due process rights because they complied with the relevant terms of the Student Conduct Code and other University policies.  [Id. at 7-9.]  Defendants also argue that they were not required to hold a hearing before suspending Plaintiff; they merely had to give Plaintiff the opportunity to answer, explain, and defend against the charges against him. Defendants contend that they satisfied this through the correspondence sent to Plaintiff and that Plaintiff failed to respond in a timely manner.  [Id. at 12-13.]  Defendants emphasize that courts are generally reluctant to interfere with a university's established disciplinary procedures and that the University consistently enforces the re-admission requirement for all students with unapproved leaves of absences.  [Id. at 16-18.] Thus, Defendants argue that Plaintiff has not established a strong likelihood of success on the merits of his due process claim.

Defendants also argue that Plaintiff will not suffer irreparable harm in the absence of preliminary relief.  Plaintiff received notice of the re-admission requirement in the 11/1/11 Letter, but failed to take any actions to secure an approved leave of absence.  Defendants contend that, if Plaintiff had done so, he could have avoided his current situation.  [Id. at 19-20.] Further, based on the circumstances of this case, including the

fact that Plaintiff pled no contest to "a serious crime" for his involvement in the incident, Defendants argue that the balance of the equities factor and the public interest factor weigh in Defendants' favor.  [Id. at 21-23.]

In addition, Defendants point out that Plaintiff has not offered to post a bond, as required by Fed. R. Civ. P. 65(c), and that Plaintiff had adequate legal remedies in 2011.  [Id. at 23-24.]  Finally, Defendants argue that the Motion is improper under Rule 65(d)(1) because Plaintiff's suspension has expired and there is no current restriction on Plaintiff's rights.  In Defendants' view, this Court should not issue an order requiring the University to ignore the University's policies.  [Id. at 24-26.]  Defendants therefore urges this Court to deny the Motion.

In his reply, Plaintiff emphasizes that he was summarily suspended after the incident and that the Trespass Warning did not give him notice of any right to a hearing or to an appeal.  The Trespass Warning prohibited him from returning to the "properties or premises" of the University of Hawai`i at Mānoa for one year.  Plaintiff argues that, based on the University's broad definition of the term "premises", this exclusion effectively barred him from contacting Defendant Uwono to arrange a meeting about the incident and barred him from contacting the Graduate Student Division.  He further argues that, based on the statement in the 11/1/11 Letter that he was

13

eligible for re-enrollment for Spring 2013, it was futile for him to contact the Graduate Student Division.   Further, his attorney made multiple efforts to contact Defendant Uwono before the purported October 31, 2011 deadline.   [Reply at 3-4.]

Plaintiff also points out that the 10/19/11 Letter and the 10/20/11 Amended Letter were confusing and misleading and did not inform him of his rights to a hearing and/or an appeal.   In addition, although Defendants state that Plaintiff had until October 31, 2011 to respond to the charges, the 10/20/11 Amended Letter shortened that deadline to October 21, 2011.   Plaintiff argues that this deprived him of a reasonable opportunity to respond and that none of Defendant Uwono's letters gave him adequate notice of the charges against him, his rights, or the requirements for his eventual re-admission.   [Id. at 5-7.]

Plaintiff argues that Defendants will not be harmed if this Court grants the TRO because he already has access to the campus, and therefore no one would be put at risk if he were allowed to resume his Political Science program.   In contrast, Plaintiff has suffered irreparable harm to his constitutional rights and faces irreparable harm to his academic progress.   He also emphasizes that, under Hawai`i law, his *nolo contendere* plea in the criminal proceeding is not an admission of guilt. Further, Defendants have not established any undue burden that his immediate reinstatement would cause.   Plaintiff therefore

14

argues that the balance of the equities and the public interest favor the issuance of the TRO.  Finally, Plaintiff emphasizes that this Court has the discretion to dispense with the requirement of a security bond.  [Id. at 7-8, 11-12.]

**STANDARD**

This Court has recognized that:

> In general, the standard for a temporary restraining order or a preliminary injunction is as follows:
>
> > "[I]njunctive relief is an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." Winter v. Natural Res. Def. Council, Inc., 129 S. Ct. 365, 376 (2008). The standard for granting a preliminary injunction and the standard for granting a temporary restraining order are identical. See Haw. Cnty. Green Party v. Clinton, 980 F. Supp. 1160, 1164 (D. Haw. 1997); Fed. R. Civ. P. 65.
>
> Sakala v. BAC Home Loans Servicing, LP, CV. No. 10-00578 DAE-LEK, 2011 WL 719482, at *4 (D. Hawai`i Feb. 22, 2011) (alteration in original).
>
> > A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest. Am. Trucking Ass'ns v. City of Los Angeles, 559 F.3d 1046, 1052 (9th Cir. 2009) (quoting Winter v. Natural Res. Def. Council, Inc., --- U.S. ----, 129 S. Ct. 365, 374, 172 L. Ed. 2d 249 (2008)) (explaining that, "[t]o the extent that [the Ninth Circuit's] cases have suggested a lesser standard, they are no longer controlling, or even viable" (footnote omitted)); see also Winter, 129 S. Ct. at

> 374-76 (holding that, even where a likelihood of success on the merits is established, a mere "possibility" of irreparable injury is insufficient to warrant preliminary injunctive relief, because "[i]ssuing a preliminary injunction based only on a possibility of irreparable harm is inconsistent with [the Supreme Court's] characterization of injunctive relief as an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief").

> Painsolvers, Inc. v. State Farm Mut. Auto. Ins. Co., 685 F. Supp. 2d 1123, 1128-29 (D. Hawai`i 2010) (footnote and some citations omitted) (alterations in original).  The Ninth Circuit has held that its "serious questions" version of the sliding scale test for preliminary injunctions survives Winter to the extent that, a court may grant a preliminary injunction where the plaintiff (1) "demonstrates . . . that serious questions going to the merits were raised and the balance of hardships tips sharply in the plaintiff's favor[,]" and (2) satisfies the other Winter factors, likelihood of irreparable injury and that the injunction is in the public interest. Alliance for the Wild Rockies v. Cottrell, 632 F.3d 1127, 1134-35 (9th Cir. 2011) (citation and block quote format omitted) (some alterations in original).

Aliah K. ex rel. Loretta M. v. Haw., Dep't of Educ., 788 F. Supp. 2d 1176, 1186-87 (D. Hawai`i 2011) (footnote omitted).[2]

---

[2] The Ninth Circuit has stated the sliding scale test as follows:

> "A preliminary injunction is appropriate when a plaintiff demonstrates 'either: (1) a likelihood of success on the merits and the possibility of irreparable injury; or (2) that serious questions going to the merits were raised and the balance of hardships tips sharply in [the plaintiff's] favor.'"  Lands Council v. Martin (Lands Council
>                                         (continued...)

## DISCUSSION

## I.   Likelihood of Success on the Merits

This Court first addresses Plaintiff's likelihood of success on the merits of his due process claim.

> A due process claim requires a two-part analysis—was plaintiff deprived of a protected interest, and if so, what process was he due. Logan v. Zimmerman Bush Co., 455 U.S. 422, 428 (1982).  Plaintiff has a protected property interest in continued enrollment at a public institution of higher learning. Univ. of Mo. v. Horowitz, 435 U.S. 78, 84-85 (1978). . . .  When a student is suspended from a public school or university for disciplinary reasons due process requires "that the student be given oral or written notices of the charges against him and, if he denies them, an explanation of the evidence the authorities have and an opportunity to present his side of the story." Goss v. Lopez, 419 U.S. 565, 581 (1975). . . .

Larsen v. Nevada, No. 2:09-CV-02460-KJD, 2012 WL 760719, at *4 (D. Nev. Mar. 7, 2012).

Defendants do not contest that Plaintiff was entitled to some form of process; their position is that Plaintiff

---

[2](...continued)
II), 479 F.3d 636, 639 (9th Cir. 2007) (quoting Clear Channel Outdoor Inc. v. City of Los Angeles, 340 F.3d 810, 813 (9th Cir. 2003)).  These two options represent extremes on a single continuum: "the less certain the district court is of the likelihood of success on the merits, the more plaintiffs must convince the district court that the public interest and balance of hardships tip in their favor." Id.

Lands Council v. McNair, 537 F.3d 981, 987 (9th. Cir. 2008) (en banc) (some citations and internal quotation marks omitted) (alteration in Lands Council).

received all of the process that he was entitled to receive because they complied with all of the University's applicable policies and procedures.  [Mem. in Opp. at 14-18.]  In particular, Defendants point to the following provisions of the Student Conduct Code:

> I.A.      Investigation
>
> Upon receiving a report that an alleged violation of the Student Conduct Code has occurred, the Student Conduct Administrator shall initiate an investigation.  The student(s) accused of misconduct will be notified in writing of the alleged violations and provided an opportunity to meet with the Student Conduct Administrator to discuss the alleged violations.  The Student Conduct Administrator has the authority to render a decision and impose sanctions if an accused student chooses to not respond to the alleged violations or otherwise participate in the process.
>
> I.B.      Determination of Charge and
>           Administrative Decision
>
> If, following the investigation, the Student Conduct Administrator finds that the existing evidence fails to support the alleged violation, no action will be taken against the accused student.  If the Student Conduct Administrator determines that it is more likely than not that the accused student violated the Student Conduct Code, s/he will render a decision and sanctions. The accused student will be informed in writing of the decision and sanction(s).  If the accused student accepts the decision and sanction(s), no further action will be taken and the documentation will be filed into the student's case file.
>
>      . . . .
>
> II.C.     Suspension—Suspension from the University of Hawai`i at Mānoa for a specified period of time, after which the student is

eligible to return.  Conditions for readmission
may be specified.

. . . .

V.   APPEAL OF ADMINISTRATIVE DECISION [sic]
The student may submit an appeal in writing
to the Student Conduct Administrator postmarked
within ten (10) school days of the date of the
written decision for one or more of the following
purposes:

A.   New Information: To consider new
information, sufficient to alter a decision, or
other relevant facts not brought out in the
Student Conduct Administrator's investigation,
because such information and/or facts were not
known to the student appealing at the time of the
Student Conduct Administrator's investigation.

B.   Procedural Error: To determine whether
the Student Conduct Administrator's investigation
was conducted fairly in light of the complaint and
information presented, and in conformity with
prescribed procedures.  Deviations from prescribed
procedures will not be a basis for sustaining an
appeal unless the deviation(s) resulted in
significant prejudice.

C.   Substantive Facts: To determine whether
the decision reached regarding the accused student
was based on information that, if believed by the
Student Conduct Administrator, was sufficient to
establish that a violation of the Student Conduct
Code occurred.

The student's written appeal will be
forwarded to the Student Conduct Appellate Board
for an appeal hearing.  A student's written appeal
that fails to meet one or more of the above
purposes shall immediately be denied and the
Student Conduct Administrator's decision and
sanction(s) shall become final.

[Id. at 7-8.[3]]  Defendants emphasize that the Student Conduct Code provides that the hearing may be recorded, and the student has the right to participate in the hearing and to have a non-attorney advisor present.  If the student is also facing criminal charges, the advisor may be an attorney.  [Id. at 9 (citing Student Conduct Code at 19-21).]

Pursuant to the Student Conduct Code, Plaintiff had the right to meet with the Student Conduct Administrator to discuss his alleged misconduct, and the Student Conduct Administrator had the authority to render a decision and impose sanctions if Plaintiff chose "to not respond to the alleged violations or otherwise participate in the process."  [Student Conduct Code at 14.]  Although the 10/19/11 Letter gave Plaintiff until October 31, 2011 to schedule an appointment with Defendant Uwono to discuss the incident, the 10/20/11 Amended Letter decreased that period to only one day.  Further, it is undisputed that Plaintiff's counsel at the time attempted to contact Defendant Uwono on October 21, 2011 and made further attempts to contact her prior to the original October 31, 2011 deadline.  [Lee Decl. at ¶ 2 (stating that he made approximately sixteen telephone calls to Defendant Uwono through November 1, 2011); Uwono Decl., Exhs. E-H (telephone message for Defendant Uwono regarding calls

---

[3] Defendants submitted the Student Conduct Code as Exhibit Z to the Uwono Declaration.

from Joseph Lee, Esq. on 10/21/11, 10/25/11, 10/26/11, 10/31/11).]  Based on the current record, this Court finds that the 10/20/11 Amended Letter deprived Plaintiff of a **meaningful** opportunity to respond to the allegations against him and that Plaintiff did attempt to respond to the allegations or to otherwise participate in the process.

This Court also notes that, although the 10/19/11 Letter and the 10/20/11 Amended Letter included links to the Student Conduct Code, the 11/1/11 Letter did not notify Plaintiff that he could appeal Defendant Uwono's decision and that his appeal would be forwarded to the Student Conduct Appellate Board for an appeal hearing.  See Student Conduct Code at 18-21.  The procedural protections which Defendants discussed in their memorandum in opposition, including the right to have an advisor present, are rights that Plaintiff would have had at an appeal hearing, not at the initial meeting with Defendant Uwono.

Having considered the record currently before it, this Court FINDS that Plaintiff has established that he is likely to succeed on the merits of his due process claim.

## II.  Likelihood of Imminent Irreparable Harm

It is true that "an alleged constitutional infringement will often alone constitute irreparable harm."  Monterey Mech. Co. v. Wilson, 125 F.3d 702, 715 (9th Cir. 1997) (citation and quotation marks omitted).  In order to obtain a TRO, however, a

21

plaintiff must establish that he is facing **imminent** irreparable harm.  Summers v. Earth Island Inst., 555 U.S. 488, 493 (2009) ("To seek injunctive relief, a plaintiff must show that he is under threat of suffering injury in fact that is concrete and particularized; the threat must be actual and imminent, not conjectural or hypothetical; it must be fairly traceable to the challenged action of the defendant; and it must be likely that a favorable judicial decision will prevent or redress the injury." (citation and internal quotation marks omitted)).

Plaintiff has established that he is likely to succeed on his claim that his suspension violated his due process rights. The 11/1/11 Letter stated that Plaintiff's suspension began on October 31, 2011 and ended on October 31, 2012.  [Seitz Decl., Exh. D at 2.]  Thus, by the time that Plaintiff filed the instant Motion on November 1, 2012, he had already completed the term of suspension.  Granting a TRO could not relieve Plaintiff of his suspension and thus will not prevent or redress Plaintiff's injury.

Plaintiff argues that he is facing imminent harm that can be remedied by a TRO because his purported one-year suspension is effectively a two-year suspension, and a possible expulsion, because he must re-apply for admission to the Political Science Department for Fall 2013 and re-admission is not guaranteed.  The 11/1/11 Letter, however, expressly

22

identifies the dates of Plaintiff's suspension and also states that Plaintiff was eligible for re-admission in Spring 2013. The requirement that Plaintiff re-apply for admission is consistent with the University's enrollment policies for graduate students. [Mem. in Opp., Decl. of Patricia Cooper ("Cooper Decl.") at ¶ 2.] Defendants also presented evidence that the requirement that Plaintiff wait until the next fall semester to resume his enrollment in the Political Science Ph.D. program is consistent with the polices of the Political Science Department. The Political Science Graduate Student Guide ("Political Science Guide") expressly states that applications for admission to the department are only reviewed for the fall semester. [Mem. in Opp., Decl. of Debora J. Halbert ("Halbert Decl."), Exh. AA at 7.] Further, the Political Science Guide reiterates the requirement that, without a formal leave of absence, a student who fails to register for courses must re-apply for admission, and re-admission is not guaranteed.[4]  [Id. at 11.] This Court therefore finds that the disciplinary action which Defendants imposed is the suspension that ended on October 31, 2012, the requirement that Plaintiff re-apply for admission for the Fall 2013 semester is not a disciplinary action.

---

[4] The University's general re-admission policy also includes an exception where the lapse of enrollment is due to an approved leave of absence. [Cooper Decl. at ¶ 2.]

Further, even assuming, *arguendo*, that Plaintiff's inability to enroll until Fall 2013 was part of the disciplinary action, this Court would not find that Plaintiff faces imminent harm.  Plaintiff testified that, at the time of the incident, he had completed all of his required formal course work for his Ph.D., and only had to complete his dissertation.  He stated that it was his understanding that the University allowed him seven years after his commencement of the Ph.D. program to complete it. If he fails to complete the degree requirements within that period of time, it is possible that the University could release him from the program completely.  [Hrg. Trans. at 7.]  Plaintiff began his Ph.D. program shortly before the incident, and he therefore has a substantial amount of time to complete it. Insofar as Plaintiff does not require any courses to complete his program, Plaintiff only requires access to the University's research facilities and contact with his committee to resume working on his Ph.D. program.  Plaintiff stated in his Reply that he "can presently access Defendant University's campus if he so chooses . . . ."  [Reply at 7.]

Based on the evidence currently before it, this Court FINDS that Plaintiff has not established that he is faced with imminent irreparable harm which could be remedied or prevented by a TRO.

III. **Balance of the Equities**

"To determine which way the balance of the hardships tips, a court must identify the possible harm caused by the preliminary injunction against the possibility of the harm caused by not issuing it." Univ. of Hawai`i Prof'l Assembly v. Cayetano, 183 F.3d 1096, 1108 (9th Cir. 1999).

Apart from protecting their interest in enforcing their admissions policies, Defendants have not presented any evidence that they will suffer substantial harm if this Court grants the TRO. Although Defendants emphasize that Plaintiff faced serious criminal charges arising from the incident, as Plaintiff points out, Plaintiff's *nolo contendere* plea is not an adjudication of guilt. See Haw. Rev. Stat. § 853-1(d). This Court, however, finds that the balance of the equities factor is neutral because Plaintiff could have taken actions which would have allowed him to avoid his current situation.

As previously noted, a formal leave of absence is an exception to the University's re-admission policy. Deborah Halbert, Ph.D., was the Graduate Chair and Advisor for the Political Science Department during the Fall 2011 semester, and thus she was Plaintiff's advisor at the time of the incident. In October 2011, Plaintiff neither contacted her about his suspension nor contacted anyone else in the Political Science Department to seek a formal leave of absence. [Halbert Decl. at ¶¶ 7-8.] Defendants also presented evidence that Plaintiff would

25

have been eligible for an approved leave of absence from the Graduate Studies Division.  Plaintiff, however, did not contact the Graduate Student Division in either 2011 or 2012 to discuss his suspension, and his failure to secure an approved leave of absence rendered his absence an unapproved leave of absence. [Cooper[5] Decl. at ¶¶ 4-6.]

Plaintiff testified that he understood the Trespass Warning as precluding him from contacting his advisor or anyone else in the Political Science Department.  He also testified he believed the 11/1/11 Letter's reference to him as an undergraduate could have indicated that his status as a graduate student was in jeopardy, forcing him to re-apply as an undergraduate.  [Hrg. Trans. at 23, 26-27.]  Thus, he argues that he could not have arranged for his suspension to be deemed a leave of absence.  This Court finds that Plaintiff's testimony as to these issues was not credible.  Plaintiff is an educated man in his forties who was a police officer for almost twenty years. [Id. at 5-6.]  Even in light of the 11/1/11 Letter's mistaken reference to Plaintiff as an undergraduate, nothing in the Trespass Warning or Defendant Uwono's letters could reasonably be interpreted as precluding Plaintiff from communicating with his advisor or other University professors.

_____

[5] Patricia Cooper is the Dean of Graduate Studies at the University of Hawai`i at Mānoa.  Thus, she manages the Graduate Division.  [Cooper Decl. at ¶ 1.]

Moreover, even without a formal leave of absence, Plaintiff could have applied for re-admission for the Spring 2013 semester as an unclassified graduate student.  The deadline to apply for admission for Spring 2013 was October 1, 2012, but the University waived that deadline for Plaintiff.  [Cooper Decl. at ¶ 7.]  At the time of the hearing on the Motion, however, Plaintiff had not applied for re-admission for either Spring 2013 or Fall 2013 because he believed that re-applying undercut his position that the suspension violated his due process rights in the first instance.  [Hrg. Trans. at 48.]  Plaintiff has a right to take this tactical position, but that position resulted in a failure to take actions which would have allowed him to resume his studies prior to Fall 2013.  This Court therefore FINDS that the balance of the equities factor is neutral.

**IV.  <u>Public Interest</u>**

This Court has recognized the following principles relevant to the public interest inquiry:

> The plaintiffs bear the initial burden of showing that the injunction is in the public interest.  <u>See</u> <u>Winter [v. Natural Resources Defense Council, Inc.]</u>, [555 U.S. 7,] 129 S. Ct. [365,] 378 [(2008)].  However, the district court need not consider public consequences that are "highly speculative."  In other words, the court should weigh the public interest in light of the likely consequences of the injunction.  Such consequences must not be too remote, insubstantial, or speculative and must be supported by evidence.

. . . .

> Stormans, Inc. v. Selecky, 586 F.3d 1109, 1139-40
> (9th Cir. 2009) (some citations and quotation
> marks omitted).  The public interest inquiry
> primarily addresses the impact on non-parties
> rather than parties.

Am. Promotional Events, Inc.-Nw. v. City & Cnty. of Honolulu, 796

F. Supp. 2d 1261, 1284-85 (D. Hawai`i 2011) (alterations in Am.

Promotional Events).

This Court also FINDS that the public interest factor

is neutral.  The public has an interest in the orderly

administration of a public university and, although the public

has an interest in protecting students' constitutional rights,

this interest is tempered by the fact that Plaintiff failed to

take reasonable steps that could have allowed him to avoid his

current position.


**V.    Summary of Factors**

Having considered all of the relevant factors, this

Court CONCLUDES that, under either the Winter test alone or the

serious questions analysis within the Winter test, Plaintiff has

not established that he is entitled to a TRO.  Insofar as

Plaintiff has not established that he is entitled to a TRO, this

Court need not address the issue of whether Plaintiff must post a

bond.

This Court emphasizes that the rulings in the instant

28

Order are solely for the purposes of the limited issues that Plaintiff placed before this Court.  This Court expresses no opinion at this time on the merits of Plaintiff's other claims.

## **CONCLUSION**

On the basis of the foregoing, Plaintiff's Motion for Temporary Restraining Order and/or Preliminary and Permanent Injunction, filed on November 1, 2012, is HEREBY DENIED.  The portion of the Motion seeking a preliminary and/or permanent injunction is DENIED WITHOUT PREJUDICE.

IT IS SO ORDERED.

DATED AT HONOLULU, HAWAII, February 26, 2013.



_/S/ Leslie E. Kobayashi_____
Leslie E. Kobayashi
United States District Judge

**AARON HUNGER V. UNIVERSITY OF HAWAII; CIVIL 12-00549 LEK-RLP; ORDER DENYING PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING ORDER AND/OR PRELIMINARY AND PERMANENT INJUNCTION**